EMILYROSE JOHNS, SBN 294319
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: emilyrose@siegelyee.com

DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
GOLDEN LAW
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Telephone: (202) 630-0332
Email: dgolden@debgoldenlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.L., | ) Case No. |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY** |
| | ) **DEMAND** |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA; RAY | ) |
| GARCIA, in his individual capacity; IVANA | ) |
| MANGRA, in her individual capacity, | ) |
| | ) |
| Defendants. | ) |

## INTRODUCTION

1.     C.L. served a sentence at the Bureau of Prisons and was housed at Federal Corrections Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club," for approximately two years.

2.     While housed at FCI Dublin, C.L. experienced sexual harassment and abuse.

3.     Other staff members at FCI Dublin, all the way up through Bureau of Prisons leadership, were aware of the culture of sexual abuse at FCI Dublin and did nothing to meaningfully respond or otherwise protect the people incarcerated there.

*C.L. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 1

4.     Plaintiff C.L. is currently battling long-lasting traumatization.

**JURISDICTION AND VENUE**

5.     An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

6.     This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

7.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

8.     Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff C.L. will list this case on the bi-monthly list that will be submitted to the Court to relate this case to those other cases.

**PARTIES**

9.     Plaintiff C.L. was at all times relevant hereto incarcerated in FCI Dublin.

10.     Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of the Federal Correctional Institute Dublin ("FCI Dublin"). FCI Dublin was a federal female low-security correctional institution.

11.     Defendant Ray Garcia was, at all times relevant hereto, the Warden and PREA Coordinator employed by the BOP. He is sued in his individual capacity.

12.     Defendant Ivana Mangra was, at all times relevant hereto, a correctional officer employed by the BOP. She is sued in her individual capacity.

13.     While acting and failing to act as alleged herein, Defendant United States had complete custody and total control of Plaintiff C.L. Plaintiff C.L. was dependent upon Defendant United States for her personal security and necessities.

14.     In performing the acts and/or omissions contained herein, Defendants Mangra and Garcia acted under color of federal law, and Plaintiff C.L. is informed and believes each acted

maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff C.L. Each knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff C.L. and to her constitutionally and statutorily protected rights. Despite this knowledge, Defendants United States and Garcia failed to take steps to protect Plaintiff C.L. and to ensure her rights to safety from sexual abuse.

### FACTS

15.    Plaintiff C.L. was incarcerated at FCI Dublin from January 2021 until it closed in April 2024.

16.    At the time, it was known openly as "the Rape Club" due to the rampant sexual abuse that occurred openly in the prison.

17.    From the moment she arrived, she saw that officers acted inappropriately sexual towards many of the prisoners.

18.    On her first day, Plaintiff C.L. saw Defendant Warden Garcia walking around with his cell phone, which she had never seen in a prison, and he was looking at women in various states of undress.

19.    He referred to the prisoners as his daughters, and several called him daddy.

20.    Later, Plaintiff C.L. saw him use his cell phone to take pictures of women in their cells.

21.    Officers regularly made rounds for count and instructed the women to be wearing less when they came around again.

22.    If they encountered a prisoner who was undressed or who was displayed in a manner that they liked, the two officers would tell the woman that they would bring her contraband as a reward.

23.    Plaintiff C.L. herself felt incredibly sexualized.

24.    Officers would regularly tell Plaintiff C.L. that they wanted her to be wearing nothing when they came by her cell so that they could see her naked, or they would ask her to make out with her roommate and let them watch.

25.     Plaintiff C.L. also saw a lot of favoritism and corruption. Officer Luna, who was in charge of removing trash, including contraband that was found during cell searches, would allow prisoners whom he favored to go through and pick out contraband.

26.     She witnessed Officer Nicholas Theodore Ramos, who dies by suicide in August 2022, accept a list of names from another prisoner and then harass and intimidate those prisoners on the list.

27.     Plaintiff C.L. also witnessed Officer Ramos retaliate against prisoners by entering their rooms, dumping out the contents of lockers, and destroying their personal property.

28.     Plaintiff C.L. also saw violent outbursts by officers that made her fear for her personal safety. For example, she saw Officer Venegas mace a prisoner in the face for going to get ice and throw a chair over the balcony in anger when someone spoke to him during count.

29.     Officers' sexual abuse, retaliation, and aggression were open, tolerated, and seemingly encouraged.

30.     Defendant Garcia knew, or should have known, about the abuse and retaliation occurring in FCI Dublin, and he failed to protect prisoners, including Plaintiff C.L., from harm.

31.     Defendant Ivana Mangra was known to associate with Officers Ramos and Sergio Saucedo, two officers who were known as prolific sexual abusers of prisoners in FCI Dublin.

32.     Defendant Mangra was notorious for conducting herself in an aggressive, hostile, and unprofessional manner towards prisoners, especially after her associates Ramos and Saucedo were investigated for their abuse.

33.     On many occasions, she directed her cruelty towards Plaintiff C.L.

34.     Defendant Mangra gave Plaintiff C.L. two left shoes, and when Plaintiff C.L. asked for a right shoe, Defendant Mangra cursed at her, told her to shut up, and refused to provide her a right shoe. Plaintiff C.L. had to use two left shoes until she could get another officer to assist her.

35.     Defendant Mangra gave Plaintiff C.L. underwear that ripped. When Plaintiff C.L. explained that her underwear was not usable, Defendant Mangra told her to shut up and deal with it. Plaintiff C.L. had to wear torn underwear.

36.    At FCI Dublin during COVID, prisoners could not get their hair cut. Plaintiff C.L. had extremely long hair that would get tangled in her waist chains. When she got tangled, she asked Defendant Mangra for assistance, and Defendant Mangra again cursed at her and told her to quit complaining.

37.    Plaintiff C.L. regularly saw officers throw grievances in the garbage in front of the prisoners handing them in.

38.    From the open sexualization, favoritism, and retaliation rampant at FCI Dublin, it was clear to Plaintiff C.L. that FCI Dublin was not safe and that reporting any inappropriate sexual conduct was futile.

39.    Defendant Mangra would take Plaintiff C.L. out to medical appointments.

40.    On one occasion, Defendant Mangra took Plaintiff C.L. out to an appointment for her tonsils. She and a male officer sat in the room while Plaintiff C.L. was being examined, and when the doctor found a cyst on her tonsils, Defendant Mangra and the male officer insisted on looking and used their cell phone flashlights to look in Plaintiff C.L.'s throat while the doctor isolated the cyst.

41.    Plaintiff C.L. felt extremely violated and vulnerable.

42.    In the summer of 2023, Plaintiff C.L. went to an outside medical professional to get her IUD removed and a new one put in.

43.    She was escorted by Defendant Mangra.

44.    While Plaintiff C.L. was in the room, with her legs spread open, waiting to get the IUD put in, Defendant Mangra was sitting in a chair facing Plaintiff C.L.

45.    Defendant Mangra had her cell phone out and pointed at Plaintiff C.L. while she was in this position.

46.    The way that Defendant Mangra held her phone indicated that she was recording Plaintiff C.L., specifically, recording her genitalia during this procedure.

47.    Plaintiff C.L. felt violated and unsafe, and that there was no one to whom she could turn.

48.     She did not feel like she could safely object because Defendant Mangra was the only officer in the room, and she feared for her physical safety.

49.     The nurse present, without prompting from Plaintiff C.L., tried to shield Plaintiff C.L.'s body from Defendant Mangra.

50.     In addition, Plaintiff C.L. feared retaliation for reporting her experience.

51.     Eventually, in December 2023, she mustered the courage to file a Prison Rape Elimination Act ("PREA") report.

52.     However, following her report, she did not hear anything back.

53.     She feared that her report was thrown out by then-Acting Warden Art Devaney.

54.     Due to Defendant Mangra's close relationship with Officer Saucedo and her open tolerance of his sexual abuse of prisoners, Plaintiff C.L. fears to this day that Defendant Mangra shared that video with Officer Saucedo.

55.     Defendant Mangra's actions made Plaintiff C.L. feel humiliated, violated, and exposed. It felt to Plaintiff C.L. like a theft of her humanity.

56.     She fears to this day that Officers have access to a video of her exposed genitals.

## EXHAUSTION

57.     On December 31, 2024, Plaintiff C.L., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

58.     On January 6, 2025, Plaintiff C.L., through counsel, mailed a supplemental administrative claim under the FTCA to the BOP's Western Regional Office.

59.     The BOP acknowledged receipt on January 14, 2025.

60.     The BOP has not substantively responded to her claim.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### GENDER VIOLENCE
### (against Defendant United States)
### (FTCA; Cal. Civ. Code § 52.4)

61.     Plaintiff C.L. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

*C.L. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 6

62.    Plaintiff C.L. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employee.

63.    The United States is named as a defendant for the acts of this individual employee under the Federal Tort Claims Act.

64.    This federal employee engaged in the wrongful conduct alleged while in the course and scope of her employment as a federal employee.

65.    Her position as a correctional officer was essential to her commission of tortious misconduct, which could not have occurred absent her federal employment.

66.    Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

67.    Defendant Mangra discriminated against Plaintiff C.L. based on her gender when she sexually abused her by physically subjecting her to sexual acts.

68.    By these acts, Defendant Mangra caused Plaintiff C.L. physical, mental, and emotional injuries as well as injury to her personal dignity.

**SECOND CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendant Mangra)**
**(Cal. Civ. Code § 52.4)**

69.    Plaintiff C.L. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

70.    Plaintiff C.L. brings this claim for gender violence under California Civil Code § 52.4 against Defendant Mangra.

71.    This federal employee engaged in the wrongful conduct alleged while in the course and scope of her employment as a federal employee.

72.    Her position as a correctional officer was essential to her commission of tortious misconduct, which could not have occurred absent her federal employment.

73.    Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

74.     Plaintiff has a nonfrivolous argument that Defendant Mangra bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

75.     Defendant Mangra discriminated against Plaintiff C.L. based on her gender when she sexually abused her by physically subjecting her to sexual acts.

76.     By these acts, Defendant Mangra caused Plaintiff C.L. physical, mental, and emotional injuries as well as injury to her personal dignity.

### THIRD CLAIM FOR RELIEF
### SEXUAL ASSAULT
### (against Defendant United States)
### (FTCA; California Common Law)

77.     Plaintiff C.L. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

78.     Plaintiff C.L. brings this claim for sexual assault under the Federal Tort Claims Act for violation of Plaintiff's rights established by California common law against the United States based on the conduct of its employee.

79.     This federal employee engaged in the wrongful conduct alleged while in the course and scope of her employment as a federal employee.

80.     Her position as a correctional officer was essential to her commission of tortious misconduct, which could not have occurred absent her federal employment.

81.     Defendant Mangra violated Plaintiff C.L.'s right to be free from sexual assault by sexually abusing her while she was incarcerated.

82.     Defendant Mangra's sexual abuse of Plaintiff C.L. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

83.     Defendant Mangra subjected Plaintiff C.L. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff C.L.'s person.

84.     By intentionally subjecting Plaintiff C.L. to sexual acts, Defendant Mangra acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

85.    By subjecting Plaintiff C.L. to sexual acts, Defendant Mangra caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

## FOURTH CLAIM FOR RELIEF
## SEXUAL ASSAULT
### (against Defendant Mangra)
### (California Common Law)

86.    Plaintiff C.L. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

87.    Plaintiff C.L. brings this claim for sexual assault under California common law against Defendant Mangra.

88.    Defendant Mangra violated Plaintiff C.L.'s right to be free from sexual assault by sexually abusing her while she was incarcerated.

89.    Defendant Mangra's sexual abuse of Plaintiff C.L. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

90.    Defendant Mangra subjected Plaintiff C.L. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff C.L.'s person.

91.    By intentionally subjecting Plaintiff C.L. to sexual acts, Defendant Mangra acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

92.    By subjecting Plaintiff C.L. to sexual acts, Defendant Mangra caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

## FIFTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against Defendant United States)
### (FTCA; California Common Law)

93.    Plaintiff C.L. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

94.    Plaintiff C.L. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of its employee.

95.    This federal employee engaged in the wrongful conduct alleged while in the course and scope of her employment as a federal employee.

96.     Her position as a correctional officer was essential to her commission of tortious misconduct, which could not have occurred absent her federal employment.

97.     Defendant Mangra engaged in outrageous conduct by subjecting Plaintiff C.L. to sexual acts while she was incarcerated as a prisoner in her employer's custody. She abused her authority over Plaintiff C.L. and her power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

98.     Defendant Mangra's sexual abuse caused Plaintiff C.L. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

99.     Defendant Mangra intended to cause Plaintiff C.L. this emotional distress because she knew that emotional distress was likely to result from her sexual abuse of a prisoner.

**SIXTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendants Mangra and Garcia)**
**(California Common Law)**

100.    Plaintiff C.L. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

101.    Plaintiff C.L. brings this claim for the intentional infliction of emotional distress against Defendants Mangra and Garcia.

102.    Defendants Mangra engaged in outrageous conduct by subjecting Plaintiff C.L. to sexual acts while she was incarcerated as a prisoner in their employers' custody. She abused her authority over Plaintiff C.L. and her power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

103.    Defendant Garcia knew or should have known that Plaintiff C.L. was at substantial risk of being sexually abused by corrections officers including Defendant Mangra and failed to protect Plaintiff C.L.

104.    Defendant Mangra's sexual abuse and Defendant Garcia's willful failure to prevent sexual abuse caused Plaintiff C.L. to suffer, and continue to suffer, severe emotional distress,

including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

105. Defendants Mangra and Garcia intended to cause Plaintiff C.L. this emotional distress because they knew that emotional distress was likely to result from their sexual abuse and/or failure to prevent sexual abuse of a prisoner.

**SEVENTH CLAIM FOR RELIEF**
**BANE ACT**
**(against all Defendants)**
**(FTCA; Cal. Civ. Code § 52.1)**

106. Plaintiff C.L. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

107. Plaintiff C.L. was in the custody and control of the United States during all relevant times.

108. Defendants Mangra and Garcia violated Plaintiff C.L.'s rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

109. Defendant United States, by the actions of its employees, Mangra and Garcia, interfered with Plaintiff C.L.'s right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; her right under the First Amendment to be free from retaliation for engaging in protected conduct such as reporting sexual abuse, and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

110. As a proximate result of these acts, Plaintiff C.L. sustained damage and injury.

//
//

**EIGHTH CLAIM FOR RELIEF**
**TRAFFICKING VICTIMS PROTECTION ACT**
**(against all Defendants)**
**(18 U.S.C. § 1581, *et seq.*)**

111.    Plaintiff C.L. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

112.    Defendant Mangra knowingly recruited, enticed, and solicited Plaintiff C.L. by ordering Plaintiff C.L. to submit to her orders or face discipline.

113.    Defendant Mangra made Plaintiff C.L. engage in sex acts through force and coercion.

114.    Defendants United States and Garcia knew of, or should have reasonably known, that Defendant Mangra was soliciting Plaintiff C.L. in exchange for sex acts, and benefited by failing to protect Plaintiff C.L.

115.    This conduct has caused Plaintiff C.L. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

**NINTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.5)**

116.    Plaintiff C.L. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

117.    Defendant Mangra knowingly recruited, enticed, and solicited Plaintiff C.L. by ordering Plaintiff C.L. to submit to her orders or face discipline.

118.    Defendant Mangra made Plaintiff C.L. engage in sex acts through force and coercion.

119.    Defendants United States and Garcia knew of, or should have reasonably known, that Defendant Mangra was engaged in these activities and intentionally placed Plaintiff C.L. at greater risk of harm and/or failed to act in a manner that protected Plaintiff C.L. from harm.

120.    Defendant United States employed Defendants Mangra and Garcia, whose actions and/or inactions occurred while they were acting as federal employees under the color of law.

121.   This conduct has caused Plaintiff C.L. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**TENTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendants Mangra and Garcia)**
**(Cal. Civ. Code § 52.5)**

122.   Plaintiff C.L. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

123.   Defendant Mangra knowingly recruited, enticed, and solicited Plaintiff C.L. by ordering Plaintiff C.L. to submit to her orders or face discipline.

124.   Defendant Mangra made Plaintiff C.L. engage in sex acts through force and coercion.

125.   Defendant Garcia knew of, or should have reasonably known, that Defendant Mangra was engaged in these activities and intentionally placed Plaintiff C.L. in greater risk of harm and/or failed to act in a manner that protected Plaintiff C.L. from harm.

126.   This conduct has caused Plaintiff C.L. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**PRAYER FOR RELIEF**

127.   Plaintiff C.L. prays for judgment against Defendant, and each of them, as follows:

(a)   An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff C.L. in an amount to be determined at trial;

(b)   An award to Plaintiff C.L. of the costs of this suit and reasonable attorneys' fees and litigation expenses, including expert witness fees; and

(c)   For such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff C.L. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: February 19, 2026          SIEGEL, YEE, BRUNNER & MEHTA

By:_____
   EmilyRose Johns

*C.L. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 13

GOLDEN LAW


By: /s/ *Deborah M. Golden*
        Deborah M. Golden

DC Bar # 470-578
Motion for *pro hac vice* forthcoming


*Attorneys for Plaintiff*